## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| SHANTI LEWIS<br>3640 Primrose Rd.<br>Philadelphia, PA 19114, | : <br> : <br> : <br> : | C.A. No.: <u>2:23-cv-4751</u> |
| Plaintiff, | : <br> : | |
| v. | : <br> : | |
| CITY OF PHILADELPHIA (Dept. of Prisons)<br>7901 State Rd.<br>Philadelphia, PA 19136, | : <br> : <br> : <br> : | |
| Defendant. | | |

## **COMPLAINT**

Plaintiff, Shanti Lewis, by and through her undersigned attorneys, files the within Complaint and avers as follows:

### I.        **PARTIES, JURISDICTION & VENUE**

1.        Plaintiff/Employee, Shanti Lewis, is an adult individual, domiciled at 3640 Primrose Rd., Philadelphia, PA 19114.

2.        Defendant/Employer, City of Philadelphia, is the legal entity subject to jurisdiction of the EEOC, PHRC and PHCR.  The Philadelphia Department of Prisons is the department in the City of Philadelphia relevant to these Charges.

3.        This Court has federal question jurisdiction over Plaintiff's claims under Title VII of the Civil Rights Act of 1964 ("Title VII") because Defendant employs more than 15 full time employees and is a municipal entity.

4.        This Court has supplemental jurisdiction over the claims brought under the Pennsylvania Human Relations Act, Pa. Stat. Ann. tit. 43, § 951 et seq. (the "PHRA").and the Philadelphia Fair Practices Ordinance ("PFPO"), Philadelphia Code, Ch. 9-1100.

5.      A Charge was filed with the EEOC and cross-filed with the PHRC, No: 530-2023-00432 (the "Charge").  The Charge  was filed within 180 days of the acts, pattern and practices giving rise to the Charge and pled in detail herein.  In the alternative, the original Charge was filed within 300 days of the acts, pattern and practices giving rise to the Charge and pled in detail herein.

6.      The EEOC Issued Notice of Right to Sue on October 23, 2023; this Complaint is timely filed within 90 days thereafter.

7.      Venue is appropriate in this Court because Defendant's place of business where Plaintiff was employed is located in Philadelphia, Pennsylvania.

8.      At all relevant times, Defendant is an "employer" as defined in and/or within the meaning of all relevant statutes, including Title VII, PHRA, and PFPO.

9.      At all relevant times, Plaintiff was an eligible employee as defined in and/or within the meaning of all relevant statutes, including Title VII, PHRA, and PFPO.

## II.    FACTUAL ALLEGATIONS

10.      Plaintiff was hired on or about March 19, 2001 as a Correctional Officer.  In or about June 2006, she was promoted to Correctional Sergeant.  In or about October 2008, she was promoted to Correctional Lieutenant.  In or about February 2022, Complainant was promoted to Correctional Captain.

11.      On or about April 21, 2022, after she was promoted to Captain, Plaintiff was reassigned to Philadelphia Industrial Correctional Center ("PICC"), one of the jails on the prison campus on State Road in Philadelphia.

12.      As a Captain, Plaintiff reported to Norman Williams, who at that time was Deputy Warden of PICC.

13.       From the beginning of her assignment to PICC, Williams showed hostility and discrimination towards Complainant due to her sex.  He made it clear, through his words and actions

as pled herein, that he did not want women to serve as shift commanders in PICC.  By way of example, on the first day of her reassignment to PICC, Williams told Lewis, "you belong to me now."

14.     On more than one occasion, Williams made comments to Complainant to the effect that women should not be shift commanders on the 3-11 shift.

15.     Williams held weekly meetings at PICC, generally at 2:00pm on Wednesdays.  Plaintiff came to work early on Wednesdays to attend these meetings.  On several occasions, Williams made demeaning and humiliating remarks to Plaintiff.  By way of example, at one weekly meeting, Williams saw Plaintiff and her co-captain, Melinda Medina (who was also at PICC on the 3-11 shift), and said "I can't have you both here, I'm not paying you." (This referenced the fact that the 3-11 commanders received overtime for attending the meeting.)  Plaintiff stated she would leave, but Williams stopped her. At another weekly meeting, Williams called Plaintiff "Lieutenant Lewis" instead of Captain.

16.     Williams frequently called Plaintiff to Williams' office during Plaintiff's shift. Williams waited until after the personnel who worked day shift were done.  Nothing of substance was accomplished during these meetings.  Williams simply used his power as Deputy Warden to force Plaintiff to chat with him.

17.     Williams frequently called Plaintiff's co-captain, Melinda Medina, a female, into these meetings with Plaintiff.  Williams never called these meetings with male captains; he only did so with female captains.

18.     Williams instructed Plaintiff to come up the back stairs, out of sight of the cameras.

19.     Plaintiff was always uncomfortable at these meetings.  Williams kept the lights low and played romantic music on his computer.  He discussed personal matters and tried to pry into the personal life of Plaintiff.

20.     Williams frequently held Plaintiff in these meetings for over an hour.  To avoid this stalking conduct, Plaintiff frequently told the center control sergeant or lobby officer to page her after a half hour so that she would have an excuse to leave.

21.     On or about June 15, 2022, Williams called Plaintiff into his office.  Williams said "sit down, I'm about to do some things to you."  Plaintiff was so upset she left the office and went into the bathroom.  This was a severe incident of harassment and discrimination.

22.     On July 13, 2022, Plaintiff and Captain Medina were called into a meeting with Williams.  Williams had a folding carpet knife in his hand.  During this meeting, Williams unfolded the knife and pointed the blade at both Plaintiff and Captain Medina.  The knife pointing was used to emphasize Williams' words.  Plaintiff was horrified by this extreme and outrageous act of harassment and discrimination.

23.     Plaintiff and Captain Medina complained about the misconduct of Williams to Defendant.

24.     When interviewed, Plaintiff provided a detailed statement of many incidents that demonstrate a pattern and practice of harassment, that it was motivated by Plaintiff's sex, and that such conduct was only directed towards females who reported to him.

25.     Defendant noted Plaintiff's complaint that Williams instructed either Captain Medina or Plaintiff to report to his office during inappropriate hours and that Plaintiff felt uncomfortable during these meetings.

26.     However, Defendant failed to investigate this allegation.  Williams denied this and Defendant took Defendant's word for this.  All of the charges brought by Complainant against Williams were not sustained.  In light of the evidence presented, this was inexcusable.

27.     It was well within Defendant's duties to assure a harassment-free work environment to investigate whether Plaintiff and Captain Medina were called to after hour meetings with no legitimate purpose.  Defendant simply failed and refused to investigate this claim.

28.     Instead of disciplining Williams for his clear misconduct, Defendant promoted him to Warden.

29.     As part of the investigation, Defendant discovered charges about Plaintiff leaving food in the lobby, which were sustained.  This was retaliatory.  The only reason Plaintiff was written up for this is because she complained about Williams' conduct.  This is a common practice and did not warrant discipline.  The motivation for the discipline was retaliation.

30.     The day Plaintiff returned from making her statement for her EEO complaint, Williams assigned Plaintiff to work at the housing unit.  This was clearly retaliatory as Captains are not assigned to the housing unit.  Lieutenants are not even assigned to housing unit duty.

31.     On December 15, 2022, Plaintiff was given an Employee Violation Report for not attending one of Williams' meetings.  That meeting was called on December 7, 2022, after Williams was aware of Plaintiff's complaints about the discriminatory nature of the meetings.  Even though Williams called the meeting, Williams had his co-Deputy Warden, William Vetter, write-up Plaintiff for not coming to Williams' meeting.  The purpose of calling the meeting was retaliatory.

32.     On June 15, 2023, Plaintiff attended a disciplinary hearing for the December 15, 2022 write-up.  Plaintiff stated, again, that Williams was harassing and intimidating Plaintiff at meetings.  The board ignored this.  It recommended Plaintiff receive a seven day suspension.  To date, Plaintiff has not yet received the Notice of Suspension.

33.     Starting in or about July 2022, after he was aware of the complaints of harassment and discrimination against him, Williams blocked Plaintiff and Medina from overtime.  Williams asserted there was a grievance for captains working overtime.  It is believed, and therefore averred, that this

allegation is false – there was no such grievance.  Williams applied this restriction only to the 3-11

Captains, which were Plaintiff and Medina and no one else.

34.     As a Deputy Warden (and later Warden), Williams' conduct creates *respondeat superior*

liability on Defendant.  In addition, or in the alternative, Defendant is liable for failing to take prompt

remedial action upon learning of the discriminatory conduct of Williams.

35.     Plaintiff is entitled to actual damages sustained as a result of Defendant's unlawful

conduct.  Plaintiff suffered severe emotional distress, lost wages and other injuries set forth in this

Charge and as will be developed through the course of discovery.

36.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe

injuries, which include but are not limited to:

        a)   Lost wages;
        b)   Lost back pay;
        c)   Lost future wages;
        d)   Lost benefits;
        e)   Embarrassment and humiliation;
        f)   severe emotional distress; and
        g)   other damages as described in further detail in this pleading and as will become
            evident through the course of discovery.

37.     Plaintiff is entitled to costs and reasonable attorney's fees for enforcement of her civil

rights.

38.     Plaintiff is entitled to equitable relief for enforcement of her civil rights; and such other

relief as the Commission finds just and proper.

## <u>COUNT I</u>: TITLE VII–SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT

39.     Repeats and realleges paragraphs 1-38 as if set forth at length herein.

40.     Defendant's conduct created a hostile work environment, in violation of Title VII, the

PHRA and the PFPO.

41.     The elements of a sexual harassment/hostile work environment claim are:

1) the employee suffered intentional discrimination because of his/her sex

2) the discrimination was severe or pervasive
3) the discrimination detrimentally affected the Plaintiff
4) the discrimination would detrimentally affect a reasonable person in like circumstances, and
5) the existence of *respondeat superior* liability.

42.    Plaintiff suffered intentional discrimination because of her sex, as set forth in detail above and incorporated herein by reference.

43.    The discrimination was severe and pervasive.

44.    The discrimination detrimentally affected Plaintiff.

45.    Defendant, through Plaintiff's supervisory employees and/or other agents with authority to act on behalf of Defendant, failed to take immediate and appropriate corrective action upon learning of the discriminatory conduct.

46.    Defendant's conduct after Plaintiff's complaints, as set forth in detail above and incorporated herein by reference, also constituted severe and pervasive discrimination against Plaintiff.

47.    As a direct and proximate result of Defendant's conduct, Plaintiff was detrimentally affected by the conduct of Defendant as set forth in detail above and incorporated herein by reference, and as will be established through the course of discovery into the damages that Plaintiff suffered.

48.    A reasonable person in like circumstances would be detrimentally affected by Defendant's conduct detailed above and incorporated herein by reference.

49.    The individuals who created the environment in which in the discriminatory conduct occurred had *respondeat superior* authority to bind Defendant.  Accordingly, Defendant is liable for such conduct.

50.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe injuries as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff seeks Judgment against Defendant, City of Philadelphia, for all equitable and monetary relief available under the applicable laws; including but not limited to

compensatory damages, liquidated damages, prejudgment interest, attorney's fees and costs, and such other relief as this Court deems just and proper.

**COUNT II:     SEX DISCRIMINATION**

51.     Repeats and realleges paragraphs 1-59 as if set forth at length herein.

52.     The elements of a claim for sex discrimination are that the Plaintiff:

1) is a member of a protected class;
2) Is qualified for the position she sought to retain;
3) suffered an adverse employment action; and
4) the action occurred under circumstances that could give rise to an inference of intentional discrimination.

53.     Plaintiff is a member of a protected class. Plaintiff is a female.

54.     Plaintiff was qualified for the position she sought to retain. At all times material, Plaintiff is and was qualified and competent to serve as Correctional Captain.  Plaintiff's performance history was excellent.

55.     Plaintiff suffered several adverse employment actions as set forth in detail above and incorporated herein by reference.

56.     The adverse action suffered by Plaintiff occurred under circumstances that could give rise to an inference of intentional discrimination.  Those circumstances are set forth in detail above and incorporated herein by reference.

57.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe injuries, as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff seeks Judgment against Defendant, City of Philadelphia, for all equitable and monetary relief available under the applicable laws; including but not limited to compensatory damages, liquidated damages, prejudgment interest, attorney's fees and costs, and such other relief as this Court deems just and proper.

**COUNT III:  RETALIATION**

58.    Repeats and realleges paragraphs 1-50 as if set forth at length herein.

59.    Defendant committed unlawful retaliatory conduct in violation of Title VII, the PHRA and the PFPO.

60.    The elements of a retaliation claim are as follows:

1) The Plaintiff engaged in a protected activity;
2) The Defendant took an adverse employment action against the Plaintiff;
3) There was a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

61.    Plaintiff engaged in a protected activity, as set forth in detail above and incorporated herein by reference.

62.    Defendant took several adverse employment actions against Plaintiff, as set forth in detail above and incorporated herein by reference.

63.    Defendant's adverse employment actions were taken as a direct and proximate result of Plaintiff's participation in the protected activity.

64.    Defendant, through Plaintiff's supervisory employees and/or other agents with authority to act on behalf of Defendant, failed to take immediate and appropriate corrective action upon learning of Plaintiff's supervisor's unlawful conduct.

65.    Defendant's conduct after Plaintiff's complaints, as set forth in detail above and incorporated herein by reference, also constituted retaliation against Plaintiff.

66.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe injuries, as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff seeks Judgment against Defendant, City of Philadelphia, for all equitable and monetary relief available under the applicable laws; including but not limited to

compensatory damages, liquidated damages, prejudgment interest, attorney's fees and costs, and such other relief as this Court deems just and proper.

**COUNT IV:  PHRA**

67.    Repeats and realleges paragraphs 1-66 as if set forth at length herein.

68.    The foregoing violations of federal laws also constitute violations of the PHRA.

69.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe injuries, as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff seeks Judgment against Defendant, City of Philadelphia, for all equitable and monetary relief available under the applicable laws; including but not limited to compensatory damages, liquidated damages, prejudgment interest, attorney's fees and costs, and such other relief as this Court deems just and proper.

**COUNT V:  PFPO**

70.    Repeats and realleges paragraphs 1-69 as if set forth at length herein.

71.    The foregoing violations of federal and state laws also constitute violations of the PFPO.

72.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe injuries, as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff seeks Judgment against Defendant, City of Philadelphia, for all equitable and monetary relief available under the applicable laws; including but not limited to compensatory damages, liquidated damages, prejudgment interest, attorney's fees and costs, and such other relief as this Court deems just and proper.

Respectfully submitted,

CREECH & CREECH LLC

/s/ Timothy P. Creech
TIMOTHY P. CREECH
1835 Market St., Suite 2710
Philadelphia, PA 19103
(215) 575-7618; Fax: (215) 575-7688
Timothy@CreechandCreech.com

DATED:        December 1, 2023